UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
IN RE:

DANNY R. PLANAVSKY,                                    CASE NO. 01-63125

                                    Debtor            Chapter 11
-------------------------------------------------------------
DANNY R. PLANAVSKY,

                         Plaintiff


              vs.                                     ADV. PRO. NO. 09-80001

COUNTY OF BROOME, COUNTY
OF TIOGA, CITY OF BINGHAMTON, TOWN
OF UNION, TOWN OF DICKENSON, TOWN
OF CHENANGO, VILLAGE OF ENDICOTT,
VILLAGE OF JOHNSON CITY, BINGHAMTON
CITY SCHOOL DISTRICT, OWEGO-APALACHIN
SCHOOL DISTRICT, UNION ENDICOTT CENTRAL
SCHOOL DISTRICT, and JOHNSON CITY CENTRAL
SCHOOL DISTRICT,

                         Defendants
-------------------------------------------------------------
APPEARANCES:

LESLIE N. REIZES, ESQ.
*Attorney for the Plaintiff*
1200 South Federal Highway
Suite 301
Boynton Beach, Florida 33435

COUGHLIN & GERHART                                    JENNIFER F. BOJDAK, ESQ.
*Attorney for Defendants Town of Dickenson,*
*Village of Johnson City and Johnson City School District*
19 Chenango Street
PO Box 2039
Binghamton, New York 13901

POPE & SCHRADER, LLP                                  ALAN J. POPE, ESQ.
*Attorney for Defendants Town of Union,*
*Village of Endicott and Union Endicott Central*
*School District*

2 Court Street
PO Box 510
Binghamton, New York 13902

ROBERT G. BEHNKE, ESQ.
*Attorney for Defendant County of Broome*
Edwin L. Crawford County Office Building
PO Box 1766
Binghamton, New York 13902

Hon. Diane Davis, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Presently under consideration by the Court are several requests for dismissal of the amended complaint, filed on June 30, 2009, by Danny R. Planavsky ("Debtor") (Dkt. No. 47). Specifically, a motion seeking dismissal of the amended complaint was filed on August 7, 2009, on behalf of Broome County (Dkt. No. 57). In addition, there are requests for dismissal contained in answers filed on behalf of other municipalities, including the Town of Union, the Union Endicott School Central School District, and the Village of Endicott (Dkt. No. 51); the Binghamton City School District, the Johnson City Central School District, the Town of Dickenson and the Village of Johnson City (Dkt. No. 54) (collectively, the "Defendants").[1] The Debtor filed a response to what the Court will consider as the "Motions" on August 26, 2009 (Dkt. No. 59).

The Motions were heard at the Court's regular calendar in Binghamton, New York, on September 3, 2009. Following oral argument, the Court indicated that it would conduct a pre-trial

---

[1] On February 23, 2009, both the Town of Union and the Village of Endicott filed a motion seeking dismissal of the Debtor's original complaint filed on January 11, 2009 (Dkt. No. 7), in which the Village of Johnson City and the Johnson City School District joined (Dkt. No. 19).

3

conference on October 16, 2009.  At the pre-trial conference, the parties discussed a number of

issues concerning the properties owned by the Debtor for which he was seeking a determination by

the Court pursuant to § 505 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code").[2]  The

Court asked that the parties submit memoranda of law on two specific issues by October 30, 2009.

The Motions were adjourned to November 3, 2009, and then to December 8, 2009, for control

purposes.  On December 8, 2009, the Court indicated that it would take the matters under submission

and render a decision.[3]  The following constitutes the Court's findings of fact and conclusions of law

pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").


## JURISDICTIONAL STATEMENT


The Court has core jurisdiction over the parties and subject matter of this adversary

proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(2) (A) and (O).

---

[2]  Because the case was filed before October 17, 2005, the applicable law is the Bankruptcy Code in effect prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA codification.

[3]  Pursuant to the discussion at the pre-trial conference, on November 2, 2009, and on consent of the parties, the Court signed an Order dismissing both the City of Binghamton and the Binghamton City School District from the adversary proceeding as defendants (Dkt. No. 86).  The parties also agreed that the various named school districts, as non-assessing entities, would not be considered defendants in the adversary proceeding.  These included the Owego-Apalachin School District, the Union Endicott Central School District and the Johnson City Central School District.

4

**FACTS**

**<u>Procedural Background Facts</u>**

The Debtor filed a voluntary petition pursuant to Chapter 11 of the Code on May 16, 2001.

On February 22, 2002, the Debtor filed a motion in the case to determine tax liability with respect

to several parcels of real property (Dkt. No. 25).  Also on February 22, 2002, the Debtor filed a

motion to value the same parcels of real property "for all purposes including 11 U.S.C. § 505" (Dkt.

No. 46).  The Debtor later withdrew his motion to determine tax liability in a letter dated July 24,

2002, in which it was indicated that the Debtor intended to pursue the relief by way of an adversary

proceeding (Dkt. No. 68).

With respect to the Debtor's request for valuation, the Honorable Stephen D. Gerling, Chief

U.S. Bankruptcy Judge for the Northern District of New York[4] signed an Order on March 20, 2002,

valuing the following parcels of real property relevant to the matter herein, as of the petition date:

> 11 Avenue B, Johnson City, New York - $10,000
> 51 Adams Street, Binghamton, New York - $70,000
> 77 Wilson Hill Road, Binghamton, New York - $30,000
> 82 Wilson Hill Road, Binghamton, New York - $134,000

(Dkt. No. 60).  The Order provides that "[t]he foregoing valuations are without prejudice to the right

of BSB Bank & Trust to contest such valuations in any respect relevant to its interests in this case."[5]

---

[4] Judge Gerling retired in February 2009 and the Honorable Diane Davis assumed the bench in March 2009 and assumed all responsibilities in connection with the Debtor's case, as well as any adversary proceedings commenced therein.  For purposes of this Decision, any reference to any orders/decisions rendered previously in the case/adversary proceedings will be referenced as having been issued by the "Court."

[5] BSB Bank & Trust had filed motions for relief from the automatic stay on May 29, 2001 (Dkt. No. 8) and on July 20, 2001 (Dkt. No. 16).

It further provided that "the portion dealing with properties in the Town of Union and Broome County outside the City of Binghamton be adjourned . . . ." *Id.*

On October 29, 2002, the Debtor commenced an adversary proceeding (Adv. Pro. No. 02-80262) ("2002 Adversary Proceeding") by the filing of a complaint pursuant to Code § 505 against the County of Broome, the County of Tioga, the City of Binghamton, the Town of Union, the Town of Dickenson, the Town of Chenango, the Village of Johnson City, the Binghamton City School District, the Union Endicott Central School District, the Johnson City Central School District, the Village of Endicott and the Johnson City School District. On November 24, 2003, the Court granted a motion for relief from the automatic stay to the City of Binghamton on consent of the parties with respect to the following properties:

> 72-76 Court Street, Binghamton, New York
> 333-335 Clinton Street, Binghamton, New York
> 128 Laurel Avenue, Binghamton, New York

In addition, the Order of November 24, 2003, dismissed with prejudice any relief sought by the Debtor with respect to those three properties (Dkt. No. 70 in 2002 Adversary Proceeding). On January 29, 2004, the Court signed a similar Order granting relief from the automatic stay to allow the County of Broome to proceed with its foreclosure proceeding against property located at 205 Main Street in the Village of Johnson City, New York (Dkt. No. 72 in 2002 Adversary Proceeding).

On February 4, 2004, the Court signed an Order dismissing the 2002 Adversary Proceeding as to the County of Tioga and the Owego-Apalachin School District (Dkt. No. 75 in 2002 Adversary Proceeding). By Order, dated April 2, 2004, the Court dismissed the 2002 Adversary Proceeding as to the County of Broome "without prejudice to Debtor contesting the amount of the tax debt owed to the County of Broome." (Dkt. No. 77 in 2002 Adversary Proceeding). On June 15, 2004, the

6

Court dismissed the City of Binghamton as a party to the 2002 Adversary Proceeding on consent of the Debtor (Dkt. No. 80 in 2002 Adversary Proceeding).

On January 26, 2006, a motion for summary judgment was filed on behalf of the Town of Union and the Village of Endicott in the 2002 Adversary Proceeding.  On June 7, 2006, the Court signed an Order granting the motion "to the extent that the complaint alleges liability in its first cause of action against the Town of Union, the Village of Endicott and the Village of Johnson City[6] for properties located in the Towns of Chenango and Dickinson" (Dkt. No. 124 in 2002 Adversary Proceeding).  The Court denied the motion with respect to the remainder of the first cause of action and granted it with respect to the second cause of action.[7]   The respective municipalities sought reconsideration of the June 7, 2006 Order, and on August 2, 2006, the Court granted said motion "insofar as it sought the exclusion of those properties which were previously adjudicated in another forum and which constituted postpetition assessments[8]  . . . it is ordered that only the following properties for the following years are subject to 505 adjudication:

_____

[6]  According to the affidavit of James A. Sacco, Esq., sworn to on January 19, 2007, the Villages of Johnson City and Endicott are situated within the Town of Union (Dkt. No. 143 in the 2002 Adversary Proceeding).

[7]  The first cause of action sought a determination of the amount of taxes due on certain properties owned by the Debtor pursuant to Code § 505.  The second cause of action alleged that the Debtor and the County of Broome had reached an accord with respect to prepetition taxes and alleged that the Debtor had paid the amount due under said agreement.

[8]  This conclusion remains valid given the holding in *Cody, Inc. v. County of Orange*, 338 F.3d 89 (2d Cir. 2003), in which the Court of Appeals determined that because the debtor had had a fair and full opportunity to present its case to the Town Board of Assessment Review, the adjudication had been made by a tribunal of competent jurisdiction prior to commencement of the case for purposes of Code § 505(a)(2)(A), despite the fact that the decision was subject to *de novo* review in state court. *Id.* at 96, citing *In re Railroad St. P'ship*, 255 B.R. 644, 647 (Bankr. N.D.N.Y. 2000).

Case 09-80001-6-dd    Doc 90    Filed 02/17/10    Entered 02/17/10 16:51:00    Desc Main
Document      Page 7 of 16

> 11 Avenue B, Johnson City: 1995; 2000[9]
> 145 Harry L. Drive, Johnson City: 1995 to 2000[10]
> 28 Avenue B, Johnson City: 1997; 2000
> 76 Arch Street, Johnson City: 1997 to 2000[11]
> 286 Main Street, Johnson City: 1999 to 2000[12]
> 207 South Loder Avenue, Endicott: 1994 to 1997[13]
> 40-48 Corliss Avenue, Johnson City: 2000
> 59 Lester Avenue, Johnson City: 2000"[14]

(Dkt. No. 135 in 2002 Adversary Proceeding).

On January 19, 2007, the Town of Union and the Village of Endicott sought dismissal of the 2002 Adversary Proceeding on the grounds that in addition to various delays in discovery, the Plaintiff had failed to comply with a scheduling order of the Court, including the requirement that appraisals be exchanged on or before January 31, 2007. On June 11, 2007, the Court signed an Order dismissing the 2002 Adversary Proceeding as against the Town of Union, the Village of

---

[9]  At the time of the Examiner's Report in 2002, the property at 11 Avenue B had been vacant for approximately two years. *See* Examiner's Report, filed June 11, 2002, at 9 (Dkt. No. 65).

[10]  The Examiner describes the property at 145 Harry L. Drive as a four family house in generally dilapidated condition in 2002. *Id.*

[11]  According to the Examiner's Report, the property at 74-76 Arch Street is "a deteriorating 12 family house." *Id.* at 8.

[12]  According to the Debtor's Amended Complaint, the address appears to be 286 Main Street, more specifically identified as Parcel 143.57-3-5. This comports with the address identified by the Examiner. The Examiner indicates that the property was purchased by the Debtor in 1991 after being gutted by fire and that as of the date of the Examiner's Report, the Debtor had restored the building, including installing a new roof and improving the two first floor commercial spaces. The residential units located on the second and third floors had not been restored as of June 2002. *See* Examiner's Report at 8. According to Debtor's Amended Complaint, Debtor is also seeking adjudication for the 2001 year. *See* Amended Complaint at 3.

[13]  The property located at 207 South Loder is comprised of a 16-unit apartment complex in the Village of Endicott.

[14]  The property located at 59 Lester Avenue is known as the "Victory Building" and was purchased from Endicott Johnson in 1994.

8

Endicott, the Village of Johnson City and the Johnson City School District (Dkt. No. 155 in 2002 Adversary Proceeding). Said Order was appealed to the U.S. District Court for the Northern District of New York and affirmed by the District Court by Order dated April 28, 2008 (Dkt. No. 176 in 2002 Adversary Proceeding). On August 22, 2008, the Court ordered the appointment of a mediator to address the complaint as it applied to the remaining defendants, namely the Town of Dickinson, the Town of Chenango and the Union Endicott School District (Dkt. No. 178 in 2002 Adversary Proceeding). No further action has been taken in the 2002 Adversary Proceeding.

On January 11, 2009, the Debtor commenced another adversary proceeding (Adv. Pro. No. 09-80001) ("2009 Adversary Proceeding") pursuant to Code § 505 by filing a complaint against the same defendants previously named in the 2002 Adversary Proceeding. Issue was joined by the filing of answers on behalf of Broome County (February 5, 2009) and the Binghamton City School District, the Johnson City Central School District, the Town of Dickenson and the Village of Johnson City (February 10, 2009). On February 23, 2009, the Town of Union and the Village of Endicott filed a motion to dismiss the 2009 Adversary Proceeding (Dkt. No. 7 in 2009 Adversary Proceeding). On April 13, 2009, the Village of Johnson City and the Johnson City School District joined in the Motion to Dismiss filed by the Town of Union and the Village of Endicott (Dkt. No. 19 in 2009 Adversary Proceeding).[15] On June 1, 2009, an answer was filed on behalf of the Town of Union and the Village of Endicott.

On June 22, 2009, the Court signed a Conditional Order of Dismissal (Dkt. No. 46 in 2009

---

[15] In the Statement of Joinder, it is indicated that the Village of Johnson City and the Johnson City School District are located within the Town of Union, and the Town of Union Assessor provides assessment services for all real property located in the Village and the School District. *See* ¶ 2 of the Joinder Statement (Dkt. No. 19 in 2009 Adversary Proceeding).

9

Adversary Proceeding) requiring the Debtor to file an amended complaint, specifically identifying the properties for which relief was sought and setting forth the effect of the Court's prior Order of 2002 fixing the value on certain properties, *inter alia*.   On June 30, 2009, the Debtor filed an amended complaint ("Amended Complaint") against the Defendants (Dkt. No. 47 in 2009 Adversary Proceeding).   It is the Amended Complaint which is the subject of the Motions now under consideration.

### Properties for which Relief is Sought

At the pre-trial conference, the parties agreed that only the following properties for the tax years noted below were subject to adjudication pursuant to Code § 505, as determined in Judge Gerling's Order of March 20, 2002, in the case (Dkt. No. 60):

   11 Avenue B, Johnson City: 1995; 2000
   145 Harry L. Drive, Johnson City: 1995 to 2000
   28 Avenue B, Johnson City: 1997; 2000
   76 Arch Street, Johnson City: 1997 to 2000
   286 Main Street, Johnson City: 1999 to 2000
   207 South Loder Avenue, Endicott: 1994 to 1997
   40-48 Corliss Avenue, Johnson City: 2000
   59 Lester Avenue, Johnson City: 2000

In addition, the Debtor requests relief pursuant to Code § 505 with respect to the following three properties located in the City of Binghamton, which the Debtor identified in both the 2002 Adversary Proceeding and the 2009 Adversary Proceeding:

77 Wilson Hill Road, Binghamton, New York, 1998 to present
82 Wilson Hill Road, Binghamton, New York, 1998 to present
51 Adams Street, Binghamton, New York,[16] 1995-2000 "and to
present and/or 2002 to 2005" (*See* Amended Complaint at pg. 3
(Dkt. No. 47 in 2009 Adversary Proceeding)).

## Issues to be Addressed

At the pre-trial conference, the Court requested that the parties address two specific issues,

which are the subject of this Decision.  First, the Court asked that the parties brief the issue of

whether or not the time for the Debtor to contest postpetition taxes lapsed under state law such that

those assessments are not subject to a Code § 505 determination.[17]  Specifically, Broome County's

attorney, Robert G. Behnke, views the issue as addressing "[w]hether the debtor's claims for a

refund of postpetition taxes he paid was [*sic*] barred under Section 505(a)(2)(B) and Article 7 of the

New York Real Property Tax Law."[18]  *See* Broome County's Memorandum of Law, filed October

30, 2009 (Dkt. No. 80 in 2009 Adversary Proceeding) at 1.  Second, the Court asked that the parties

brief the issue of which date is to be utilized for determining the value of the properties for purposes

of any Code § 505 determination, as well as for purposes of confirmation of the Debtor's plan,

specifically, the date of filing the petition or the date of ultimate confirmation of the Debtor's plan.

---

[16] According to the Examiner's Report, 51 Adams Avenue is a four or five family residence
in the Town of Dickinson.  *See* Examiner Report at 10.

[17] At the pre-trial conference held on October 16, 2009, the Debtor's attorney indicated that
with the exception of the Arch Street property, the Debtor had paid all postpetition taxes and,
accordingly, was seeking refunds pursuant to Code § 505.

[18] Article 7 of the New York Real Property Tax Law is labeled "Judicial Review."  Section
700(3) states that a proceeding to review an assessment of real property "shall have preference over
all other civil actions and proceedings in all courts."  N.Y.R.P.T.L. § 700(3). (McKinney's 2000 &
Supp. 2009).

**DISCUSSION**

**Applicability of Code § 505(a)(2)(B)**
**and the New York Real Property Tax Law**

In his Memorandum of Law, the Debtor focuses on Code § 505(a) in arguing that the Court

is authorized to "rule on a debtor's challenge to a previously assessed (but unpaid) tax liability even

if the period for challenging the assessment has expired under applicable nonbankruptcy law."

However, the issue for which the Court requested input from the parties was limited to the

jurisdiction of the Court to address requests by a debtor for a refund of previously paid taxes when

the debtor has not followed procedures set forth under state law.

The issue was addressed by the bankruptcy court in *In re Cumberland Farms, Inc.*, 175 B.R.

138 (Bankr. D. Mass. 1994). In that case, the debtor had filed its chapter 11 petition on May 1, 1992.

It had paid all prepetition real property taxes except for the 1992 taxes. The court examined the

legislative history of Code § 505(a)(2)(B) and concluded that it had no jurisdiction to address the

debtor's claims for a refund. *Id.* at 142. The court agreed with the results in *In re St. John's Nursing*

*Home, Inc.*, 169 B.R. 795 (D. Mass. 1994) and expressly stated that it would "no longer follow the

refund aspect of the *Ledgemere* decision" which it had previously issued in 1991 (*see In re*

*Ledgemere Land Corp.*, 135 B.R. 193 (Bankr. D.Mass. 1991)). *See Cumberland Farms*, 175 B.R.

at 142.

This same approach was taken by the United States Court of Appeals for the Third Circuit in

*City of Perth Amboy v. Custom Distrib. Servs. (In re Custom Distrib. Servs., Inc.)*, 224 F.3d 235 (3d

Cir. 2000). In that case, the debtor commenced an adversary proceeding against the city of Perth

Amboy seeking a reassessment of its real estate obligations and tax refunds and/or tax offsets of both

pre- and postpetition periods.  The city argued that because the debtor had not made proper refund

requests under New Jersey law for any of the years at issue, the court was without authority to decide

the debtor's right to a refund.  *Id.* at 239.  Specifically, the city noted that Code § 505(a)(2)(B)(i)

allows the bankruptcy court to determine any right to a tax refund before "120 days after the

trustee/[debtor in possession] properly requests such refund from the governmental unit from which

such refund is claimed . . . ." 11 U.S.C. § 505(a)(2)(B)(i).  The court focused on the words "properly

requests" and found them to be "susceptible to more than one meaning."  *Id.* at 241.  Accordingly,

it examined the legislative history and concluded that Congress, in enacting the 1978 version of the

Code, "precluded the bankruptcy court from exercising jurisdiction over refund claims unless the

debtor had seasonably sought an appeal with the appropriate taxing entity."  *Id.*  It concluded that the

proposed language in the 1999 version of the Code only further confirmed that "the bankruptcy

court's authority to determine refund rights are [*sic*] conditioned upon the debtor's compliance with

the procedural requirements and limitation periods of the taxing authority."  *Id.* at 242.  It found

additional support for its conclusion in *Cumberland Farms* and *St. Johns Nursing Home, supra*, as

well as *In re Constable Terminal Corp.*, 222 B.R. 734, 740 (Bankr. D.N.J. 1998), *aff'd,* 246 B.R. 181

(D.N.J. 2000), *aff'd,* 281 F.3d 220 (3d Cir. 2001) and *In re EUA Power Corp.*, 184 B.R. 631, 636

(Bankr. D.N.H. 1995).  *See Custom Distrib.*, 224 F.3d at 242-43; *see also In re ANC Rental Corp.*,

316 B.R. 150, 152 (Bankr. D.Del. 2004) (relying on *Custom Distrib.* for the proposition that the

"properly requests" language requires an exhaustion of state court administrative remedies before

proceeding pursuant to Code § 505(a)); *In re CGE Shattuck LLC*, 272 B.R. 514, 517 (Bankr. D.N.H.

2001) (noting that under *EUA Power Corp.* "a Debtor may not seek a refund for taxes already paid

unless the Debtor or the trustee has requested a refund within the time period set by state law").  In

13

so holding, the court observed "the havoc that would be visited on the financial stability of a municipality if it were forced to refund taxes paid years before." *Id.* at 243.

The Debtor relies on *In re AWB Assocs., G.P.*, 144 B.R. 270 (Bankr. E.D.Pa. 1992) in support of his argument that this Court has the authority to address his request for refunds. However, as pointed out by the court in *Custom Distrib.*, the analysis in *AWB* "did not specifically deal with § 505(a)(2)(B)(i) and its 'properly requests' requirement. Nor did they engage in an analysis of the legislative history of that section, which may have led them to a different conclusion." *Custom Distribution*, 224 F.3d at 242. Arguably, the Debtor's reliance may have some basis in connection with the issue of whether the bankruptcy court has jurisdiction to address previously assessed but unpaid tax liability, but that is not the issue for which the Court requested briefing.

Thus, the Court does not have jurisdiction to address the requests by the Debtor for a refund pursuant to Code § 505 since the Debtor has not followed the procedures set forth under Article 7 of New York Real Property Tax Law. Therefore, the Court concludes that it lacks authority to make any such determination and will grant the Motions to Dismiss the Debtor's Amended Complaint to the extent that the Debtor seeks refunds of taxes previously paid.[19]

## Date to be utilized in Determining the Value of the Properties for Purposes of Code § 505 and for Purposes of Confirmation of the Debtor's Plan

Property is to be assessed for tax purposes on an annual basis according to its condition on

---

[19] This comports with the amendment to Code § 505 in 2005, which is applicable for all cases filed on or after October 17, 2005. The current statute, while admittedly not applicable to the case herein, provides that a bankruptcy court may not determine "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired." 11 U.S.C. § 505(a)(2)(C).

14

the taxable date. *See Commerce Holding Corp. v. Board of Assessors*, 88 N.Y.2d 724, 729 , 67

N.E.2d 127, 649 N.Y.S.2d 932 (N.Y. 1996); *Stillwell Equip.Corp. v. Assessors for Town of*

*Greenburgh*, 251 A.D.2d 672, 675 N.Y.S.2d 870 (N.Y. App. Civ. 1998) (citations omitted).

Accordingly, the value of the Properties for purposes of Code § 505 is a moving target, and the

Debtor has the burden of establishing such value for each year for which he seeks consideration

pursuant to Code § 505.

 With respect to the valuation of the various properties owned by the Debtor, the Debtor argues

that for purposes of confirmation, the Court should follow the rule enunciated in *In re Wood*, 190

B.R. 788 (Bankr. M.D.Pa. 1996) and "use the fair market values as set by the taxing authorities

themselves as at the petition filing date." *See* Debtor's Brief (Dkt. No. 85) at 4. The debtor in *Wood*

had filed an individual chapter 11 petition and sought to strip down the mortgage to the value of the

property at the time the petition was filed. The court noted that over the course of the bankruptcy,

the property had appreciated by $20,000 as a result of being rezoned from residential to commercial

property as a result of the debtor's efforts. *Id.* at 795. The debtor's plan provided for no distribution

to unsecured creditors. The court observed that "regardless of what date we chose for valuation, First

Federal Savings & Loan of Rochester would still be undersecured to some degree." *Id.* Ultimately,

the court concluded that the bank was to receive the present value of its secured claim as determined

on the date of the filing of the debtor's petition over the life of the plan" rather than benefit from the

appreciation in value due to the debtor's efforts in obtaining rezoning. *Id.* The court expressly

reserved "the right to choose a different valuation point in any future case based on those factors

enunciated herein." *Id.*

 While the allowance of a claim pursuant to Code § 502(a) is measured as of the date of the

filing of the petition, Code § 506(a) states that "[the] value [of the creditor's interest in the estate's interest in property] shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property." *Wood* at 791. For example, it often is necessary for a court to determine value in the context of a motion pursuant to Code § 361 seeking adequate protection based on the value of the collateral as of the filing date of the petition. *See id.* at 792. The date of filing is also the date used when considering the avoidance of liens pursuant to Code § 522(f). *Id.* at 793. However, as noted by the court in *Wood,* "the vast majority of courts have considered the date of confirmation and/or the effective date of the plan as the relevant date to value the secured claim of that creditor for purposes of plan implementation." *Id.* at 793; *see also Matter of Atlanta Southern Business Park, Ltd.*, 173 B.R. 444, 450 (Bankr. N.D.Ga. 1994) (observing that "when valuation is for the purpose of plan confirmation, the value must be determined as of the date the plan is confirmed, and not at some other date"); *see generally, Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau)*, 135 B.R. 209, 214 (N.D.N.Y. 1992) (indicating that the bankruptcy court should have conducted a new valuation hearing closer to the chapter 13 confirmation date given the objections raised by the mortgagee concerning the treatment of its claim under the debtors' plan).

The Court concludes that the valuation date for purposes of the treatment of the interests of the municipalities is to be determined as of the confirmation date of the Debtor's plan. This conclusion is further supported by the fact that it has been almost nine years since the Debtor filed his petition.

Based on the foregoing, it is hereby

ORDERED that to the extent that the Debtor's Amended Complaint seeks adjudication by this Court of his entitlement to refunds in connection with real property taxes previously paid without

16

making a proper request for a refund under New York law, the Court denies such relief; it is further

ORDERED that within fourteen (14) days of this Order, the Debtor file a second amended complaint which reflects the findings herein and incorporates the agreements reached on the record at the pre-trial conference held on October 16, 2009,[20] as memorialized in orders of this Court, including the dismissal of certain defendants (Dkt. No. 86 in 2009 Adversary Proceeding); it is further

ORDERED that the remaining defendants file any motions in response to said second amended complaint within fourteen (14) days of its filing and schedule them for a hearing before this Court on its April 1, 2010 Binghamton calendar.

Dated at Utica, New York
this 17th day of February 2010

/s/ Diane Davis
DIANE DAVIS
U.S. Bankruptcy Judge

---

[20] The Court believes that there are eleven properties remaining for which the Debtor has the burden of establishing their value for each year for which he seeks a determination pursuant to Code § 505 should the Court agree to such an adjudication. Also relevant is the Court's Order, signed November 2, 2009, dismissing with prejudice the City of Binghamton and the Binghamton City School District as defendants. *See* Footnote 3, *supra.* The Court would also note that by letter, dated November 1, 2009, and directed to the Debtor's counsel, the Town of Chenango requested that it be dismissed as a defendant (Dkt. No. 89 in 2009 Adversary Proceeding). However, the docket does not reflect any response from the Debtor or his counsel.